## CABLE CO v SKEEN

Ohio Appeals, 9th Dist, Summit Co

No 2212. Decided Aug 14, 1933

Brouse, Englebeck, McDowell, May & Bierce, Akron, for plaintiff in error.

A. F. O'Neil, Akron, and Frank Steel, Akron, for defendant in error.

FARR, J, (7th Dist) sitting in place of WASHBURN, PJ.

## OPINION

By FUNK, J.

1. Counsel claim that "the verdict is not sustained by sufficient evidence."

After reading the entire record, we cannot say that there is not evidence sufficient to sustain the verdict.

2. Counsel contend that the court erred in requiring plaintiff to elect, at the close of his case in chief whether he would proceed against the Cable Co. or the city of Akron.

While it appears, from the comments of the court, that the Cable Co. had contracted in writing to save the city harmless from any claims for liability, the contract was not pleaded and was not in evidence, and of course could not be considered on the motion to elect; and it was because of this situation that the trial court held that defendants were not joint tort-feasors and required the plaintiff to elect which defendant he would proceed against.

Whether or not the city had a contract with the Cable Co., the Cable Co. caused the clay to be deposited upon the street, and there is substantial evidence to the effect that the rain in the late afternoon, just prior to the accident, made the clay very wet and caused the street to become slippery; and if the jury so found, the Cable Co. was chargeable with the creation, by an act of commission and not omission, of a nuisance, for the resulting injury from which it would be liable, under the holding in the case of **Morris v Woodburn, 57 Oh St 330**, which case has been cited with approval on numerous occasions by our Supreme Court and other courts in Ohio. See also, **Village v Gilbow, 81 Oh St 263, at pp. 272-273**, and **Agricultural Society v Brenner, 122 Oh St 560, at pp. 573-574.**

We are therefore of the opinion that said election which the court required the plaintiff to make, was not prejudicial error, at least so far as the Cable Co. is concerned, and the plaintiff below is not here complaining. What, if any, effect the fact that the Cable Co. was hauling said clay under a contract with the city, would have on

the question of what notice was necessary to make the city liable for failure to remove the clay from the street, we are not called upon to decide in this case.

3. We find no error prejudicial to the Cable Co. in the refusal of the court to direct a verdict for it at the conclusion of plaintiff's evidence or at the conclusion of all the evidence.

4. It is contended that the court erred in charging the jury that if the plaintiff was entitled to recover at all, he was entitled to recover not only for the loss of services of his wife and expenses already incurred, but also for such loss of services and expenses as he would with reasonable certainty incur in the future.

The case cited by counsel in support of this claim (Worley v R. R. Co., 1 Handy, 481, 12 O. Dec. (Rep.) 247), which is commented upon in 21 O. Jur., "Husband and Wife," §262, page 553, does not seem to be in point, as that was an action for loss of the wife's services by reason of her death.

We are unable to find any decisions in Ohio directly on this question, but find that the charge as given seems to be supported by the weight of authority outside of this state. We believe that the rule followed by the court is the better one, and therefore find no error in this particular. As bearing upon this question, see:

Hopkins v Atl. & St. L. R. R. (N. H.), 72 Am. Dec. 287.

Kimberly v Howland (N. C.), 55 SE 778.

Birmingham S. Ry. Co. v Lintner, 141 Ala. 420.

4 Sutherland on Damages (4th ed.), §1251, p. 4750.

6 Thompson on Negligence (2nd ed.), §7342, p. 349.

30 C.J., "Husband and Wife," §687, p. 967.

13 R.C.L., "Husband and Wife," §468, p. 1421.

5. We find no error in the refusal of the court to give the Cable Co.'s special requests to charge before argument Nos. 2, 3, 4, 5, 9 and 10.

6. Neither do we find any prejudicial error resulting from the questions asked by the court of the several witnesses, nor in allowing plaintiff to amend his petition during trial.

7. It is claimed that there was error in the argument of counsel for plaintiff.

As only the part of the argument complained of is in the record, and as the court fully admonished the jury and instructed them in very definite terms not to consider the part complained of, we cannot say that the remarks constituted error prejudicial to the Cable Co.

8. It is claimed that the court erred in charging that, if the jury found that the Cable Co. violated the ordinance pleaded, it was negligence as a matter of law.

It is contended that, as the ordinance pleaded is in the chapter on "Offenses against Public Health" and not in the chapter on "Offenses against Public Safety," the matter complained of is not one of the dangers against which it was intended to afford protection, and that consequently its violation cannot be said to be negligence per se in this kind of an action.

The title to chapter 3, in which said §37 of the ordinance is found, is "Offenses against Public Health." It would seem, from the language used in said section, and from the heading of the subdivision in which said section is placed—which is "Privies, Night Soil, Dead Animals, Garbage, Filth, Refuse and the Slaughtering of Animals"—that this section was intended primarily to prevent property owners from making public dumping grounds of the streets and alleys when cleaning up their premises, thereby protecting the public health; although the section is perhaps broad enough to cover the placing of "dirt" or "earth" upon the street in the manner shown by the evidence in the instant case.

The weight of authority seems to be to the effect that, in determining whether the violation of a particular ordinance is negligence per se in a given case, consideration must be given to the purpose of the enactment, the dangers against which it is intended to afford protection, and the injuries it is intended to prevent; and if the matter complained of does not come within the purview of these things such ordinance is competent only for the purpose of tending to show negligence, and the jury should not be instructed that its violation is negligence per se.

First. The question is thus presented: What purpose was intended in the enactment of said section 37?

In seeking the answer to this question, another question suggests itself: Should such purpose be controlled entirely by the title of the chapter and the heading of the subdivision in which said section 37 is found, or should the language of the section entirely control, or should both be considered?

It will be noted that said section 37 contains a number of items not mentioned in §12649, GC, as offenses against public health.

Considering only the language of said section 37, it could as well, or perhaps bet-

ter, appear in the chapter regulating offenses against public safety as in that against public health.

It is apparent that to deposit in the street some of the things mentioned in said section 37, such as manure and refuse matter, would be detrimental to public health; but it is also just as apparent that the depositing in the street of some of the other things mentioned in said section 37, such as earth (which is undoubtedly used as meaning ground or soil), or stones, or even ashes, would have no effect whatsoever on public health, as the word "street" is not limited to paved streets, and streets, alleys and public grounds are composed of stones or gravel and earth, and ashes are frequently used to make walks and fill up holes in or level off unimproved streets and to prevent slipping on improved—that is, hardsurfaced—streets when icy.

On the other hand, it is quite clear that depositing in a street any of the things mentioned in said section 37 would be dangerous to public safety, especially on an improved street, unless it would be just a thin sprinkling of ashes on an icy street; and danger to public safety would result even in an unimproved street, if said things were not spread out but placed in a pile, thereby making the street uneven and unsafe for travel; while some of the things mentioned would be inherently dangerous both to health and safety no matter how placed upon a street, whether improved or unimproved.

It would therefore seem, from the nature of the various things said section 37 makes it unlawful to deposit in a street or alley, that counsel was concerned not so much with whether the purpose of the enactment of said section was to protect health or safety, but that the main purpose was to protect both the health and safety of the public by making it unlawful to deposit the things mentioned in a street or alley.

It is a well recognized rule that, if, judging from the language used in the body of an act, any one of several purposes could fairly have been intended by the lawmakers, including the one stated in the title of the chapter and heading of the subdivision in which the act appears, the purpose stated in such title and heading will be looked to and conclusively regarded as the one intended; but that where, if such title and heading were regarded as determining the purpose and scope of an act, a part of the act would be rendered meaningless or inoperative, then the title and heading should be disregarded and the

purpose or purposes of the act ascertained from the most reasonable construction of the language used that will carry into effect all the provisions of the act. Whether or not the title of the chapter and heading of the subdivision in which an act appears are parts of the act, they should never be allowed to control the purpose and scope of the act in preference to a plain intendment as deduced from the language of the act proper.

It is quite obvious in this case that, if the title and heading control the purpose and scope of the ordinance here under consideration, said ordinance is meaningless or inoperative in respect to some of the things which it purports to make unlawful to deposit in a street.

In view of the duty placed upon the city by statute (§3714, GC), and the fact that it clearly appears that the language of said section 37 renders its violation a menace to safety as well as to health, and in view of the further fact that the depositing in a street of any of the things mentioned in said section 37 would be dangerous to public safety, and as the depositing of some of them could have no effect whatever on public health as such, we conclude that the city council must have intended not to limit the purpose of said section to offenses against health but intended to include safety, and that the title of the chapter and the heading of the subdivision should thus not be allowed to control the scope of the ordinance. It follows, therefore, that the purpose of the ordinance should not be limited to cover offenses against health only, but that it should be regarded as including safety, even though the council did not repeat the ordinance in the chapter on offenses against public safety or make it so apply by reference in some manner.

There is, nevertheless, some indication of this intention on the part of council in §103, in chapter 7, which pertains to offenses against public safety, wherein it is made unlawful for contractors to transport earth over the streets unless a deposit is made with the director of public safety for the purpose of cleaning the street of earth that may fall from the vehicles transporting it. We therefore hold that it was not error to charge that the violation of said section 37 is negligence as a matter of law.

Second. Assuming that the purpose of said section 37 is controlled entirely by the title to the chapter and the heading of the subdivision in which it is found and that it was error to charge that its violation was negligence per se, was such error prejudicial

in the instant case?

It should be observed that the second amended petition charges not only negligence in violating said section 37 of the ordinances, but also common law negligence; and while it is not artistically drawn and could not be recommended as a sample, we think it does contain sufficient allegations to charge common law negligence for failure to remove the clay on the street or provide a warning of some kind as to the street's slippery condition when wet. There is no evidence that any warning was provided or attempted to be provided, but there is some evidence that there was no warning of any kind provided.

Even if the injury complained of as resulting from a violation of said section 37 was not such an injury as comes within the purview of that section, if the title to the chapter and the heading of the subdivision in which it is found, control its purpose, the ordinance was not for that reason wholly inapplicable to the instant case, as the disregard of the ordinance was nevertheless a material fact and competent as evidence tending to prove the allegations of the amended petition as to common law negligence. The depositing of clay upon said boulevard, in violation of said ordinance, was a breach of defendant Cable Co.'s duty to the public, and therefore evidence of negligence, for which it was liable in this case, if the injuries in question were in a substantial sense proximately caused by such violation.

Hansen v Kemmish (Iowa), 45 A.L.R. 498, 208 NW 277.

Union Pac. Ry. Co. v McDonald, 152 U. S. 262, at pp. 282-283.

Railroad Co. v Whitacre, 35 Oh St 627, syllabus 3 and at p. 629. .

After said section 37 was admitted in evidence, counsel for the Cable Co. introduced in evidence the entire book containing the charter and all the revised ordinances of the city of Akron of 1927, all of which charter and ordinances were in force at the time of the accident, for the purpose of showing the titles of the chapters and headings of the subdivisions. All the ordinances were thus before the jury.

Counsel for the Cable Co., in their brief, call attention to §103 in the chapter on "Offenses against Public Safety," which makes it unlawful for any contractor to transport earth over any paved street of the city before he has deposited with the director of public service a sum not exceeding $100, to be determined by said director as a guarantee that said contractor will clean the streets of earth that may fall from the wagon or trucks of such contractor, and in case he shall fail to so clean such streets, then the city may do so and deduct the cost thereof from the amount so deposited and return any balance to such contractor.

What, if any, consideration the jury gave this ordinance, or what use, if any, the attorneys made of it in argument, does not appear from the record. However, this ordinance does show some obligation on the part of the Cable Co. to remove the clay it caused to be deposited upon the street, and shows that the city regarded such clay on the street as a violation of its statutory duty (§3714, GC) to keep the streets free from nuisance; and under the rule as announced in Morris v Woodburn, supra, the Cable Co., having deposited the clay on the street—which is an act of commission— was ultimately, if not primarily, liable for any damage resulting from any nuisance that might result from permitting said clay to remain on said city street, at least without some suitable warning as to the slippery condition thus created when wet.

The evidence does not show whether or not the Cable Co. complied with said ordinance, and it is not material for the purpose of this case whether it did or not, as the ordinance only requires the contractor to make the deposit so the city could use the same to pay the expense of cleaning the street if the contractor did not; and if the contractor made the deposit, it was not a violation of the ordinance if the Cable Co. did not clean the earth off the street. Although under such ordinance, or the ordinance pleaded, the Cable Co. and the city may not be liable as joint tort-feasors, the violation of such ordinances by permitting clay to remain on said street without some warning of the slippery condition thus created when wet, would be some evidence indicating negligence on the part of the Cable Co.

As there is no dispute about whether the Cable Co. caused whatever clay there was upon said boulevard to be deposited there while it was transporting said clay in trucks over said boulevard (the only dispute concerning said clay being as to the amount that was upon the boulevard at the time of the accident), and as there is ample evidence to support a finding that both Lida Skeen and said Smith skidded on the street by reason of the wet clay thereon, and as the evidence is such as would warrant a jury finding that the wet clay on the street was the proximate cause of Mrs. Skeen's injuries, we are inclined to the

opinion that, even though the court should not have charged that the violation of said section 37 was negligence per se, it surely could not, under such circumstances, be prejudicial to the Cable Co.

It might be said, in this connection, that it is commonly known that it does not take much wet clay on a smooth cement street, as the evidence shows this street to have been, to make the street slippery, and that a scraper such as was claimed to have been used, as shown by the evidence, could not possibly have taken off all the clay and prevented it from being slippery; and as jurors consider evidence in the light of their own knowledge and experience, the jury in this case no doubt found that there was sufficient clay left on the street, even if the scraper had been used, to make it slippery, and that such slippery condition was the proximate cause of the injuries received by Mrs. Skeen.

9. It is claimed that the court erred in permitting the plaintiff to amend his petition. at the time of charging the jury, to read "dirt and/or earth" instead of only the word "dirt."

Under the evidence in this case, we find no reversible error in this particular.

Finding as we do upon the respective claimed errors, that there was no error prejudicial to the Cable Co., the judgment will be affirmed.

FARR and STEVENS, JJ, concur in judgment.